

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:                                         *

EMILY M. HILL,                                 *          Case No. 05-11080-NVA
                                                          Chapter 13
                    Debtor.                    *

*      *      *      *      *      *      *     *

EMILY M. HILL,                                 *

                    Movant.                    *

v.                                             *

CHASE MANHATTAN MORTGAGE                        *
CORPORATION,
                                               *
                    Respondent.                *

                                               *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OF DECISION REGARDING ORDER DENYING
AMENDED MOTION [21] TO VOID THE FORECLOSURE
SALE OF DEBTOR'S REAL PROPERTY**

The Court has before it the Amended Motion [21] to Void the Foreclosure Sale of

Debtor's Real Property (the "Amended Motion"), filed by Emily M. Hill ("Ms. Hill" or the

"Debtor"), on March 18, 2005, and the Response [26] to Amended Motion to Void the

Foreclosure Sale of Debtor's Real Property, filed by Chase Home Finance, LLC, now Chase

Manhattan Mortgage Corporation ("Chase"), on March 31, 2005.  On April 5, 2005, the Court

conducted a hearing on this matter and has heard the evidence, reviewed the documents and had

the benefit of argument of counsel.  The Court now issues this Memorandum of Decision of its

findings of fact and conclusions of law in support of its Order Denying Amended Motion [21] to

Void the Foreclosure Sale of Debtor's Real Property, which Order will be entered in conjunction

with this Memorandum of Decision.

**I.**    **FACTS**

The Court finds the facts stated herein based upon the pleadings of record in this case and

in the other bankruptcy cases more specifically set forth below, as well as an evaluation of the

evidence presented at the April 5, 2005 hearing, including certain stipulated facts, the testimony

and credibility of witnesses and the inferences which the Court has found reasonable to draw

from such evidence.

A.    The Property

The Debtor, her son Stephen E. Hill ("Mr. Hill"), and third party Willie Strothers Bennett

("Mr. Bennett") jointly own certain real property located at 4809 51st Avenue, Hyattsville,

Maryland 20781 ("Property"). On or about February 17, 2000, the three owners executed and

delivered to F&M Mortgage Services, Inc. ("F&M") a note in the amount of $132,350.00, plus

interest, attorneys' fees, costs and late charges to be paid over thirty (30) years (the "Note").  To

secure the payment of the sum due under the Note, they executed and delivered to F&M a deed

of trust dated February 17, 2000 (the "Deed of Trust"), encumbering the Property.  The Deed of

Trust and Note were later transferred to Chase.

B.    The Bankruptcy Cases and Stay Relief Proceedings

Mr. Hill filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 21, 2002, Case No. 02-19803-DK.  The petition was filed two days before a scheduled foreclosure sale.  On November 12, 2002, Chase filed a Motion [11] for Relief from Stay as to Debtor and Co-Debtors, Willie Bennett and Emily Hill.  The Court entered an Order granting this motion on January 17, 2003 [30].  On February 5, 2003, Mr. Hill filed a Motion [35] for Reconsideration, which motion was denied by Order entered on February 21, 2003 [38].  On March 17, 2003, this case was dismissed with prejudice for failure to confirm a plan.

Less than a month later, on April 7, 2003, Mr. Bennett filed a voluntary petition under Chapter 13 of the Bankruptcy Code, Case No. 03-14040-NVA.  The petition was filed one day before a scheduled foreclosure sale.  This case is still open.  On August 7, 2003, Chase filed a Motion [18] for Relief from Automatic Stay and Co-Debtor Stay.  On October 1, 2003, Mr. Bennett and Chase entered into a Consent Order Modifying Stay [22].  Pursuant to this Consent Order, Mr. Bennett agreed to cure arrearages for the period October 2003 through March 2004 and to make regular monthly mortgage payments.  On December 23, 2003, Chase filed an Affidavit of Default [28].  On February 18, 2004, Chase filed a Notice of Intent to Foreclose [29] following Mr. Bennett's failure to cure the default.

Two months later, on April 14, 2004, Mr. Hill filed a second voluntary petition under Chapter 13 of the Bankruptcy Code, Case No. 04-19136-PM.  The petition was filed two days before a scheduled foreclosure sale.  On May 12, 2004, Chase filed a Motion [21] for Relief from Stay and Co-Debtor Stay and for Prospective Relief from the Automatic Stay and served Debtor and Co-Debtors.  On May 26, 2004, Mr. Hill filed a Response [25] to Chase's Motion. The Co-Debtor's did not file a Response.  On July 22, 2004, the Court entered a Consent Order

3

[36] Modifying Automatic Stay and Co-Debtor Stay and for Prospective Relief from the Automatic Stay that had been signed by Chase and Mr. Hill.  Pursuant to this Consent Order, Mr. Hill agreed to cure arrearages for the period July 2003 through January 2004[1] and to make regular monthly mortgage payments.  In addition, the Consent Order contained the following language at issue in this case imposing an equitable servitude on the Property:

> ORDERED, that prospective relief is granted such that any future bankruptcy filing within (180) days of the entry of this order, or relief being granted , by the Debtor or Co-Debtor or anyone to whom she may transfer the Property will not create a stay with respect to the Property, and [Mortgagee] will not need to seek relief from the automatic stay in order to exercise its rights under the Deed of Trust and applicable law should the Debtor or Co-Debtor or anyone to whom she may transfer the Property file another bankruptcy case within (180) days of the entry of this Order or relief being granted.

*See* Consent Order [36], p. 4.

On September 24, 2004, Chase filed an affidavit of default, which resulted in the entry by the Court of an Amended Consent Order [47] Modifying Automatic Stay and Co-Debtor Stay and for Prospective Relief from Automatic Stay on November 2, 2004 (the "Amended Consent Order").  The Amended Consent Order is the subject of the instant dispute.  Under the Amended Consent Order, Mr. Hill agreed to cure arrearages for the period October 2004 through April 2005 and to make regular monthly payments.  It also contained identical language quoted above imposing the equitable servitude on the Property.  On November 10, 2004, the case was dismissed for failure to confirm a plan.

On January 18, 2005, two months after Mr. Hill's second bankruptcy case was dismissed, Ms. Hill filed the instant voluntary case under Chapter 13 of the Bankruptcy Code.  On January

---

[1]   The Court notes that the dates listed in the Consent Order are all in 2004, which appears to be a typographical error.

19, 2005, Chase conducted a foreclosure sale of the Property.  On March 18, 2005, the Debtor

filed the Amended Motion [21] to Void the Foreclosure Sale of the Debtor's Real Property in the

present case.  On April 7, 2005, the Circuit Court for Prince George's County, captioned under

case no. CAE04-04776, ratified the foreclosure sale and memorialized its decision in a

Memorandum and Order:

> Defendants argue that the January 19, 2005 Foreclosure Sale
> should have [been] automatically stayed by Ms. Hill's Chapter 13
> Bankruptcy filing one day prior to the sale - January 18, 2005.  The
> Court notes, however, that the Honorable Paul Mannes, United States
> Bankruptcy Court for the District of Maryland, entered an Amended
> Consent Order Modifying the Automatic Stay and Co-Debtor Stay for
> Prospective Relief from the Automatic Stay on November 1, 2004.  The
> Order reads in pertinent part that,
>
> any future bankruptcy filing within (180) days of the entry of this order,
> or relief being granted, by the Debtor or Co-Debtor . . .  *will not create
> a stay with respect to the property*, and [Mortgagee] will not need to
> seek relief from the automatic stay in order to exercise its rights under
> the Deed of Trust . . . should the Debtor or Co-Debtor . . . file another
> bankruptcy case within (180) days of the entry of this Order ...
>
> (Mannes, J., Order) (emphasis added).  Ms. Hill's January 18, 2005
> Chapter 13 pleading was filed before the expiration of the 180 days,
> inasmuch as only 78 days had passed from Judge Mannes' November
> 1, 2004 Order.  Ms. Hill's Chapter 13 pleading on January 18, 2005,
> therefore, could not act as an automatic stay, and did not affect the
> foreclosure sale conducted on Janauary 19, 2005.  Therefore,
> Defendants' third argument is without merit and must be denied.

(McKee, J., Order, Apr. 7, 2005).

## II        DISCUSSION OF LEGAL PRINCIPLES

The parties raised several issues at the April 5, 2005 hearing, but the determination to be

made here is a narrow one: whether the Amended Consent Order, signed by Chase and Mr. Hill

in his second bankruptcy case and containing the equitable servitude provision, may be enforced

against the Debtor.  The Debtor argues that it may not because she did not sign it and because she did not have notice that Chase would be seeking to impose an equitable servitude on the Property.  Chase argues that the Debtor did have notice and is now impermissibly attacking a final order entered in another bankruptcy proceeding.

The starting point for the Court's analysis is *In re Yimam*, 214 B.R. 463 (Bankr. D. Md. 1997).  In that case, Mr. and Ms. Yimam, husband and wife and co-owners of certain real property located in Potomac, Maryland, had taken turns filing seven bankruptcy petitions in a period of four years and had not paid the mortgage for five years.  In all seven cases, the debtors made no effort to prosecute the case, including, for example, proposing a plan capable of being confirmed.  The court found that the Yimams had engaged in a "continuous use of the bankruptcy system for the purpose of forestalling foreclosure."  *Id*. at 465.  The court further found that an equitable servitude would be imposed on the property in order to:

> bind subsequent purchasers of the property just like an equitable
> servitude, even though these purchasers are not before the Court and have
> not even been determined at the present time.  The Court finds it appropriate
> to extend the law of equitable servitudes to such a servitude imposed by a court
> on real property, so that it binds subsequent owners.

*Id*. at 466.

In fashioning this relief for the creditor as a result of the debtor's abuse of the bankruptcy process, the court looked to a California case, *In re Snow*, 201 B.R. 968 (Bankr. C.D. Cal. 1996).  In that case, the court confronted a situation in which an owner of property subject to foreclosure (who happened to be in bankruptcy at the time) transferred a fractional interest in the Property to several others, one of whom filed his own bankruptcy petition.  The *Snow* Court found that an equitable servitude was necessary to prevent continuing abuse by the debtor.

Maryland recognizes equitable servitudes.  *In re Yimam*, 214 B.R. at 467.  An equitable

6

servitude arises in cases where one or more of the requirements for the existence of a covenant running with the land are not met, but: (1) the subsequent owner has notice of the covenant; (2) the holder of the servitude is seeking only equitable relief; and (3) it would be inequitable to deny enforcement of the servitude.  *In re Snow*, 201 B.R. at 973.   The basic purpose of the doctrine is to prevent a subsequent possessor or user of the land to set up the defense of a bona fide purchaser.  *In re Yimam*, 214 B.R. at 466, n. 2 (citation omitted).  Notice to the subsequent purchaser is, therefore, a key consideration and will be discussed in further detail below.

Bankruptcy courts have imposed equitable servitudes in cases where a pattern of abuse of the bankruptcy system is clear, either by an individual debtor filing multiple bankruptcy petitions on the eve of foreclosure (*see e.g., Aurora Loan Services, Inc. v. Amey (In re Amey),* 314 B.R. 864 (Bankr. N.D. Ga. 2004) (debtor filed four petitions over two years); *County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*, 317 B.R. 144 (Bankr. E.D. Cal. 2004) (debtor filed at least eleven cases over eight years in his name or other entities he controlled, sometimes in different jurisdictions); *In re Steeley*, 243 B.R. 421 (Bankr. N.D. Ala. 1999) (debtor filed six times – three within a thirteen-month period, at least one in a different jurisdiction)), or a husband and wife playing "bankruptcy tag" (*see e.g., In re Roeben,* 294 B.R. 840 (Bankr. E.D. Ark. 2003) (husband and wife filed six times in six years); *In re Price*, 304 B.R. 769 (Bankr. N.D. Ohio 2004) (husband and wife filed a total of six times in six years); *In re Yimam*, 214 B.R. at 466 (as discussed above, husband and wife took turns filing seven petitions over four years)).  In all of these cases, the courts found that the debtors were abusing the bankruptcy system and that imposition of an equitable servitude was appropriate.

However, whether or not it is appropriate to impose such a remedy upon a non-debtor co-owner requires an additional consideration of due process.  In some cases, the courts have ruled

that a co-owner must be served with a complaint and summons pursuant to Bankruptcy Rule 7001(7). *In re Snow*, 201 B.R. at 976-77 (declining to bind four non-debtor co-owners without an adversary proceeding, particularly where the movant had made no effort to serve them with the underlying motion or the notice of the hearing); *see also In re Chappelle*, 2000 Bankr. LEXIS 1910 (Bankr. D.C. April 3, 2000) (adversary proceeding is required to accomplish *in rem* order with respect to property interest of a non-debtor); *In re Graham*, 1998 Bankr. LEXIS 961 (Bankr. E.D. Pa. Aug. 3, 1998) (finding that creditor has Federal Rule 9011 at his disposal should non-debtor co-owner file a petition on the eve of foreclosure).

In cases where the court dispensed with the formal need for complaint and summons, the conduct of the non-debtor co-owner was sufficiently egregious to impute constructive notice upon him. *In re Fernandez*, 212 B.R. 361, 371 (Bankr. C.D. Cal. 1997) (constructive notice imputed to protect the integrity of the bankruptcy process based on co-owner acting in concert with debtor to interfere with foreclosure); *In re Roeben*, 294 B.R. at 848 (facts of the particular case led court to exercise authority under 11 U.S.C. § 105(a) to override the need for formal service of process). The *Roeben* court did not do so lightly:

> This decision finding that Spouse had constructive notice is a
> narrow one, and it rests on the egregious abuses of the Bankruptcy Code
> as detailed above. In future cases, this Court will not be inclined to impute
> such notice to nondebtor spouse co-owners of property who have not been
> joined in an adversary proceeding, absent collusion and flagrant abuses of
> the Bankruptcy Code.

*Id*.

The cases discussed herein suggest that in situations where there is no record of egregious behavior or abuse of the bankruptcy process that a creditor must initiate an adversary proceeding against a co-owner. *See e.g.*, *In re Amey*, 314 B.R. at 870. In that case, the co-owner

of property subject to foreclosure had never filed bankruptcy before.  The Court held that *in rem* relief would not be granted as to the co-owner's interest in the property because that individual was not properly before the court.

III.    **CONCLUSION**

In the instant case, all co-owners have filed bankruptcy petitions at least once in the last four years.  Mr. Hill has filed twice.  Each petition was filed on the eve of a foreclosure sale scheduled by Chase.  Chase took care to include the names of the co-debtors in the caption of its motion for relief from stay in Mr. Hill's case and to serve them with such motion.  The Court finds it notable that neither Ms. Hill nor Mr. Bennett filed a Response to Chase's Motion [21] (in Mr. Hill's bankruptcy case) or to the Affidavit of Default [40].  The Co-Debtors appear to have been properly served with those papers, and with the Consent Order [36] and Amended Consent Order [47] modifying the Stay and Imposing an Equitable Servitude.  It is clear in this case that the Debtor filed her bankruptcy petition in order to stop foreclosure on the Property, and this case was fourth in the line-up of the bankruptcy cases filed by her fellow property owners on the eve of foreclosure.  The Court finds that the Debtor and her co-owners acted together in a concerted way to thwart Chase's efforts to enforce its rights and this concerted conduct was an abuse of the bankruptcy process.

Based on the facts and circumstances of this case, and pursuant to the legal principles discussed above, the Court finds sufficient notice upon the Debtor of the equitable servitude against the Property.  Accordingly, the Amended Consent Order entered by Judge Mannes in Mr. Hill's bankruptcy case, 04-19136-PM, shall be enforced against the Debtor in this case.  A separate Order will issue.

9

cc:    Debtor
       Debtor's Counsel
       Counsel for Chase Manhattan Mortgage
       Stephen Hill
       Willie Bennett
       Chapter 13 Trustee
       U.S. Trustee